# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| Bunge S.A., | § |
| | §  CIVIL ACTION NO. |
| Plaintiff, | § |
| | §  2:25-cv-_____ |
| vs. | § |
| | §  IN ADMIRALTY, RULE 9(h) |
| XCoal Energy and Resources, | § |
| XCoal Energy and Resources, LLC | § |
| | § |
| Defendants, | § |
| | § |
| and | § |
| | § |
| PNC Bank, N.A, | § |
| | § |
| Garnishee. | § |

## VERIFIED COMPLAINT

Plaintiff Bunge S.A. ("**Bunge**" or "**Plaintiff**") files this Verified Complaint against Defendants XCoal Energy and Resources and XCoal Energy and Resources, LLC (collectively, "**XCoal**" or "**Defendants**"), stating admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("**Supplemental Rule B**"), and alleges as follows:

## PARTIES

1. Plaintiff is an entity existing under the laws of Switzerland.

2. On information and belief, Defendant XCoal Energy and Resources is a limited partnership existing under the laws of Pennsylvania and is a coal marketing and logistics company. It is registered in several states to conduct business as "*XCoal Energy and Resources*".

3. On information and belief, Defendant XCoal Energy and Resources, LLC is a limited liability company existing under the laws of Pennsylvania and is the general partner of XCoal Energy and Resources.

4. This complaint is brought against both XCoal Energy and Resources, LLC and XCoal Energy and Resources because, on information and belief, the former is the general partner of the latter and, as such, is generally liable for its debts and obligations.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333(1) because this action is an admiralty and maritime claim in that it arises from breach of a maritime contract, namely, a charter party.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and Rule B(1)(a) of the Supplemental Rules.

## FACTS

7. On or about March 5, 2024, Plaintiff, as charterers and, Maple Leaf Bulk Carriers Limited, as owners, entered into a time charter party in respect of the MV MAPLE WISDOM (the "**Time Charter**" and the "**Vessel**", respectively) for a period of "*about 26 months to maximum 30 months (about to mean - 15 days)*" to start between May 30, 2024 and September 15, 2024.

8. On or about November 15, 2024, Plaintiff chartered the Vessel to XCoal Energy and Resources for one voyage from Norfolk, Virginia to a discharge port in China for carriage of approximately 80,000 metric tons of bulk coal (the "**Sub-Charter**"). The Sub-Charter was made on an Americanized Welsh Coal Charter form, with amendments and which incorporated Rider Clauses. A copy of the Sub-Charter, inclusive of its Rider Clause provisions, is annexed hereto as **Exhibit A**.

9. The Sub-Charter, at its Clause 36, also listed "*XCoal Energy and Resources, LLC*" as the "*other party*" for purposes of giving "*all load and discharge port notices and cargo quantity declarations.*"

10. On or about December 12, 2024, 79,650 metric tons of Buchanan coking coal (the "**Cargo**") were loaded on board the Vessel in Norfolk, Virginia.

11. On information and belief, the corresponding bills of lading were likewise issued on or about December 12, 2024. Clause 30 of the Sub-Charter provided that "*100% of freight and any undisputed load port demurrage due latest before breaking bulk at the discharge port.*" Also of note, the Sub-Charter provided:

   a. At its Clause 26, that Plaintiff, as owner, had a lien on Cargo for, *inter alia*, freight and demurrage;

   b. At its Clause 45B, that "*taxes and/or dues on cargo*" were to be for the "*Shipper's Charterer's/Consignee's account*";

   c. At its Clause 49A, that "*[c]argo claims to be settled in accordance with the NYPE Interclub Agreement's latest issue, as attached*";

   d. At its Clause 5, that "*[i]f any dispute … should arise under this Charter, same to be referred to three parties in the City of New York, one to be appointed by each of the parties hereto, the third by the two so chosen, and their decision, or that of any two of them, shall be final and binding, and this agreement may, for enforcing the same, be made a rule of Court. Said three persons to be commercial shipping*" persons; and

3

e. Relatedly, at its Clause 54, that "*U.S. Maritime Law will govern any dispute under this Charter Party, and to the extent that such body of law needs to be supplemented, by the laws of the state of New York.*"

12. Plaintiff invoiced XCoal on or about December 23, 2025 for freight, due as of the same date, in the amount of $2,532,031.60, basis discharging port being Tianjin. As set forth in the allegations which follow, the amount of outstanding freight due to Plaintiff continued to grow as XCoal failed to perform its contractual obligations (the "**Outstanding Freight**").

13. On or about February 4, 2025, the State Council of China announced that an additional 15% tariff (the "**Additional Tariff**") would be imposed on coal imported from the United States, effective February 10, 2025.

14. However, XCoal had, as of that time and continuing for an extended period thereafter, already failed to perform its contractual obligations under the Sub-Charter, including to pay the Outstanding Freight owed in anything close to a timely manner. XCoal repeatedly stated that it would pay, but it continuously delayed or otherwise failed to perform.

15. On information and belief, but for XCoal's breaches, the Vessel could have arrived at the discharge port prior to the effective date of the Additional Tariff. However, in light of XCoal's contractual breaches by failing to make timely payment, Plaintiff had no choice but to protect its interests pursuant to the Sub-Charter, including by way of its cargo lien provisions.

16. Accordingly, the Outstanding Freight, together with other sums which accrued for the Vessel's waiting time during this prolonged detention, grew. In that respect, on or about February 27, 2025, Plaintiff invoiced XCoal for the amount of $2,877,919.40, basis discharge port being Zhangjiang.

17. That was towards the end of the extended period during which the Vessel remained offshore, namely from about February 8 until about March 3, 2025, as Plaintiff necessarily had to protect its interests (included by way of its lien rights) due to XCoal's failure to make prompt payment in accordance with its obligations.

18. XCoal finally made payment in the amount of $2,835,994.40. That sum reflected further accrual, less certain commissions. It was also comprised, *inter alia* and with respect to what Plaintiff intends to show as XCoal's acknowledgment of its breaches, the time for detention while waiting offshore.

19. However, shortly after that payment, the cargo receivers, Jiangsu Shagan International Trade Co., Ltd. (the "**Receivers**"), arrested the Vessel at the port of Zhanjiang, China to seek security in respect of the 15% Additional Tariff on coal imported from the United States.

20. On or about March 20, 2025, security for RMB 18 million (equivalent to approximately **$2,480,896**, at this time and as to which Plaintiff reserves all rights to seek additional security as may be appropriate) was posted so that the Vessel could be released from arrest at Zhanjiang. Plaintiff is funding that security and is damaged by XCoal's breaches in the same amount. XCoal's breaches have also caused further damage to Plaintiff, including but not limited to amounts currently projected to be, at least, as follows:

    a. Hire accrued under the Time Charter for the period of the arrest, running from about March 3, 2025, until March 20, 2025, at approximately $16,600 per day (or **$282,200**);

    b. Fuel costs during the same period, at an estimated amount of $600 per day (or **$10,200**);

   c. An additional four days of hire accrued under the Time Charter, during which the Vessel was not employed because the laycan for its next fixture needed to be extended by four days, amounting to **$66,400**;

   d. All additional sums to be determined and as to which Plaintiff reserves all of its rights to seek further security.

  21. By failing to promptly pay the Outstanding Freight, XCoal breached the Sub-Charter, a quintessential maritime contract, and caused substantial damages to Plaintiff. XCoal breached its obligations, *inter alia:* by failing to promptly pay freight and demurrage; by forcing Plaintiff to rely upon its lien rights offshore and before breaking bulk; and by failing to deal with charges on cargo which were for its account pursuant to the Sub-Charter.

  22. As best can presently be estimated, Plaintiff's damages are in the principal amount of, at least, **$2,839,696** (as per paragraph 20 above), plus interest and costs. Plaintiff currently estimates that its global costs (inclusive of interest for a projected two-year period) for addressing the legal and related implications arising from XCoal's breaches will be in the range of 30% of that principal sum, or approximately **$850,000**. In that regard, Plaintiff notes that New York State law (*see* paragraph 11[e] above) provides for interest at 9% per annum.

**Arbitration Proceedings and Supplemental Rule B Allegations**

  23. The Sub-Charter provides for arbitration in the City of New York.

  24. Plaintiff reserves all rights to commence arbitration against XCoal in due course and have the underlying merits of this dispute resolved by arbitration. Likewise, Plaintiff reserves all rights to seek and recover the full quantum of its damages, attorneys' fees, costs, interest, and other expenses in the arbitration proceedings.

  25. Plaintiff also reserves all rights to seek increased security as may be appropriate.

26. Plaintiff brings this action solely to obtain *quasi in rem* jurisdiction over Defendants and to secure the claim against Defendants more fully described above.

27. After a diligent search, and as further set forth in the accompanying Declaration of Abigail Leigh Waag, Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

28. After a diligent search, and as further set forth in the accompanying Motion for Order Authorizing Issuance of Process of Maritime Attachment and Garnishment, there is no applicable maritime or statutory bar to seeking Rule B attachment here.

29. Plaintiff is accordingly entitled to attach and garnish Defendants' property within this District pursuant to the provisions of Supplemental Rule B.

30. On information and belief, Defendants have, or will have during the pendency of this action, property within this District and subject to the jurisdiction of this Court.

31. On information and belief, Defendants' property subject to attachment and garnishment, and located within this District includes, but is not limited to, any property belonging, and any debts owed, to Defendants which may be held by PNC Bank N.A. as garnishee (the "**Garnishee**"). That bank has numerous branches located within the geographical confines of this District. The basis for the foregoing information and belief is information learned from XCoal's belated payment to Plaintiff, which was made from an account at PNC Bank N.A.

32. Plaintiff therefore seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, attaching and/or garnishing, *inter alia*, any property of, including debts owed to, Defendants

located within the District, for the purpose of obtaining *quasi in rem* jurisdiction over Defendants and to secure Plaintiff's claims, as described above.

**WHEREFORE**, Plaintiff prays for the following:

(A) That since Defendants cannot be found within this District pursuant to the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, against all property, tangible or intangible, including assets, cash, monies, funds, accounts, assets in checking, savings, escrow or other accounts, accounts payable, credits and/or debits, balances, certificates of deposit, contents of safety deposit boxes, letters of credit or proceeds therefrom, effects, debts, proceeds from insurance policies, receivables, stocks, bonds or other securities, sums owing under a credit agreement, or any other contractual agreements and/or other obligations, up to the amount of **$3,689,696** (that being the currently calculated principal amount of $2,839,696 plus $850,000 estimated costs and interest for a projected two-years until resolution), belonging to, due or being transferred to, from or for the benefit of Defendant XCoal Energy and Resources or Defendant XCoal Energy and Resources, LLC or in their name, moving through, or within the possession, custody, or control of the Garnishee, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Rule B answer the matters alleged in this Verified Complaint;

(B) That this Court retain jurisdiction for purposes of any eventual arbitral award and/or judgments which may be obtained by Plaintiff against the Defendants;

(C) That this Court award Plaintiff the attorneys' fees and costs incurred in this action as applicable, and any applicable interest; and

(D) For such other and further relief as the Court deems just and proper.

Dated: March 21, 2025

                                                    Respectfully submitted,

                                                    **Floyd Zadkovich (US) LLP**

/s/ Abigail L. Waag
Abigail L. Waag
Texas State Bar No. 24141348
abby.waag@floydzad.com
(917) 984-6057
33 East 33rd Street, Suite 905
New York, New York 10016

/s/ Edward W. Floyd
Edward W. Floyd *(Pro Hac Vice Admission to be Filed)*
ed.floyd@floydzad.com
(917) 999 6914
33 E 33rd Street, Suite 905
New York, New York 10016

*Counsels for Plaintiff Bunge S.A.*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Abigail Leigh Waag declares are follows:

1. I am an attorney admitted to practice before this Court and am an associate with the firm Floyd Zadkovich (US) LLP, counsel for Plaintiff, Bunge S.A. ("**Bunge**"), in the above-captioned matter.

2. I have read the foregoing Verified Complaint. To the best of my knowledge, information, and belief, the facts contained therein are true. The grounds for my belief are based upon the review of correspondence and other relevant documents pertaining to the transactions set forth in the Verified Complaint.

3. I am making this Verification as attorney for Bunge because Bunge is a foreign business entity, and it is my understanding that no officer or director of Bunge is conveniently within jurisdiction of this Court.

4. Bunge has not made any prior attachment applications with respect to the matters in suit.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 21st of March 2025 in New York.

/s/ Abigail L. Waag
Abigail L. Waag